### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| GERALD D. STATUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 11-CV-74-TLW |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Gerald D. Statum ("plaintiff") requests judicial review pursuant to 42 U.S.C. § 405(g) of

the decision of the Commissioner of the Social Security Administration ("Commissioner")

denying plaintiff's applications for disability insurance benefits and supplemental security

income under Titles II and XVI of the Social Security Act. In accordance with 28 U.S.C. §

636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge.

(Dkt. # 9). Any appeal of this order will be directly to the Tenth Circuit Court of Appeals.

Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts that

the Commissioner erred because the ALJ incorrectly determined that plaintiff was not disabled.

On appeal, plaintiff asserts the ALJ failed to: (1) properly consider the medical source evidence;

(2) perform a proper step five determination; and (3) perform a proper credibility determination.

(Dkt. # 12 at 2). For the reasons discussed below, this Court REMANDS the decision of the

Commissioner.

## Procedural History

On September 9, 2005, plaintiff filed an application for disability insurance benefits and

supplemental security income benefits under Titles II and XVI of the Social Security Act, 42

U.S.C. §§ 216(i), 223(d), and 1614(a)(3)(A). Plaintiff alleges disability due to arthritis, chronic

obstructive pulmonary disease ("COPD"), and a back impairment beginning December 1, 2004.

(R. 19, 131). After being denied benefits, plaintiff filed a written request for a hearing before an

ALJ on February 28, 2007. The ALJ conducted hearings on August 8, 2008 and May 19, 2009.[1]

(R. 19, 28, 535). On June 24, 2009, the ALJ issued his decision, denying benefits. On June 26,

2009, plaintiff appealed this decision to the Appeals Counsel and submitted supplemental

medical evidence to be reviewed. (R. 4, 12). Following the decision, the Appeals Council upheld

the ALJ's decision and denied plaintiff's request for review on December 11, 2010. (R. 13). The

decision of the Appeals Council represents the Commissioner's final decision for purposes of

further appeal. 20 C.F.R. §§ 404.981, 416.1481. On September 19, 2011, plaintiff timely filed

the subject action with this Court. (Dkt. # 2).

## Standard of Review and Social Security Law

When applying for disability benefits, a plaintiff bears the initial burden of proving that

he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled"

under the Social Security Act is defined as the "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. §

423(d)(1)(A). A plaintiff is disabled under the Act only if his or her "physical or mental

impairment or impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security

regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§

404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the

---

[1] Due to complications with the order of exhibits documenting plaintiff's medical records, the
ALJ ordered further examinations and rescheduled the hearing for a later date.

five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

The role of the court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

**Background**

Plaintiff was born on January 2, 1960, and was 49 years old at the time of the ALJ's decision on June 24, 2009. (R. 537). He dropped out of school in the sixth grade and never obtained a GED.[2] (R. 36, 538). Plaintiff's prior work history consists of employment as a fence builder (SVP 6, medium exertion), a handyman (SVP 5, medium exertion), and a general laborer (SVP 5, medium exertion). (R. 182-3, 564-65). He consumes a half-pack of cigarettes per day, and rarely consumes alcohol. (R. 426, 559). Plaintiff alleges a disability onset date of December 1, 2004. (R. 31, 131). Plaintiff is married and currently lives with his wife and two daughters.[3] (R. 34, 554). In his complaint, plaintiff alleges that his spine injury, arthritis of the spine, rheumatoid arthritis, migraine headaches, and depression culminated in his becoming disabled. (R. 540-57). He was previously diagnosed with rheumatoid arthritis, cervical radiculopathy, and COPD. (R. 21, 172, 426, 454). According to plaintiff's latest medical record, dated April 13, 2009, he is currently prescribed Symbicort, MS Contin, Norco, Methotrexate and Protonix. (R. 447). Plaintiff's prescription history also includes Oxycoton, Percocet, Valium, Cymbalta, Flexeril, and Buspar. (R. 315-26, 362, 464-72).

At the May 2009 hearing, plaintiff testified that the results of a blood test, administered by his previous treating physician, Dr. Zarintosh-Russell, showed he was positive for rheumatoid arthritis. (R. 540). Plaintiff stated that he currently received treatment for this condition from Dr. Mease. Id. When asked what body parts were affected by the rheumatoid arthritis, plaintiff stated, "It affects my hands, fingers, my elbows, my knees, my feet, my hip at times. It's moving down to my knees now real bad." Id. Plaintiff also included his wrists and "[j]ust about every

---

[2] Plaintiff attended a vocational school for welding in Fort Worth, Texas but did not graduate from the program. No other education was reported. (R. 36, 538).

[3] Plaintiff's youngest daughter is a C7 quadriplegic and requires daily in-home care by a Patient Care Assistant. (R. 34, 554-55).

joint and bone." (R. 541). To remedy the pain, plaintiff will lie down, soak in a hot tub, use ice

packs, heat packs, and take medication. Id.

Plaintiff's medical records range in time from December 2001 to May 2009, and include

records from plaintiff's treating physicians, medical testing, and state consultative examinations.

(R. 237-56, 257-61, 262-98, 299-306, 307-32, 333-49, 350-58, 359-64, 365-81, 382-407, 408-23,

424-533). Plaintiff received a consultative examination by Dr. Beau Jennings, D.O., on October

17, 2008. Dr. Jennings found that plaintiff manipulated small objects well, demonstrated good

strength, and had a full range of motion in the upper extremities. (R. 408). Plaintiff's lower

extremities showed no joint deformities; his heel-toe gait was normal and he performed squats

well, and a straight leg raising test was negative. Id. Test results showed "evidence for

moderately advanced multilevel cervical spondylosis and degenerative disc disease" with space

narrowing most severe at C5-6 and C6-7 disc levels. "Alignment is anatomic and an acute

cervical fracture or dislocation is identified"; however, Dr. Jennings did not remark on the results

of plaintiff's x-rays. (R. 410).

After a non-examining review of the record on January 20, 2007, Dr. Elva Montoya,

M.D. states:

> 47 y.o. alleges COPD, arthritis in joints, back surgery and RA. Current CT reveals
> evidence of spondylosis. In 8/05 ROM was decreased. There is no evidence of
> any neuro deficits. Current PE indicates lungs to be clear and there is no sensory
> or motor deficits.
> On the ADL's claimant alleges difficulty lifting, standing and walking long
> periods. He also has difficulty handling objects. [Plaintiff] is being treated with
> conservative treatment of home exercise and medication. The degree of limitation
> does not appear to be supported by evidence in file.
>
> * * *
>
> Dr. R. Russell's statement on report 5/9/06 that [plaintiff] is not capable of
> working a typical 8 hour day or 40 hour work week is an issue reserved to the
> Commissioner.

> Dr. Russell's opinion regarding [plaintiff's] ability to sit, stand walk 2 hours in an 8 hour workday; occasionally lift up to 20 lbs. and other functional limitations is being considered. The assessment on sitting, standing and walking is not supported by clinical findings in file.

(R. 352, 357). Dr. Montoya assessed plaintiff's Residual Functional Capacity ("RFC) as follows: plaintiff can occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for 6 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday, and can push and/or pull without limitation. (R. 352). Dr. Montoya also found plaintiff capable of unlimited handling, with limited overhead reaching. (R. 354).

Plaintiff has a history of various back problems, one of which resulted in surgery.[4] The alleged disabling injuries are also attributed to a 2005 automobile accident in which plaintiff suffered a lower cervical spine injury. (R. 296-98). X-rays of the cervical spine with obliques from March 11, 2005, indicated focal degenerative change in the C6-7 level disk space with disk space narrowing and anterior osteophytes, the record indicates a clinical impression of cervical radiculopathy on July 11, 2006. (R. 340).

According to the record, Dr. Zarintosh-Russell was plaintiff's treating physician from July 26, 2004 until approximately April 30, 2008. (R. 307-09, 310-32, 348-49, 365-81). Dr. Zarintosh-Russell's initial consultation with plaintiff contains complaints of numbness in his right hand and establishes that plaintiff was previously seen for back pain, for which he was prescribed Percocet. (R. 326). Over the course of four years, Dr. Zarintosh-Russell consistently notes that plaintiff was "alert" and "oriented", with no psychological issues and "mental status intact". (R. 312-22, 324-32, 349, 367-79). The only exception was on January 01, 2005, when plaintiff visited Dr. Zarintosh-Russell for depression resulting from the recent death of his

---

[4] In 1994, plaintiff underwent lumbar spine surgery as a result of a work-related injury, but returned to work post-surgery. (R. 326, 555).

cousin. In her examination notes, Dr. Zarintosh-Russell stated that plaintiff wanted "something for his nerves," so she prescribed him Valium and allotted him one refill. (R. 323-24). Generally, plaintiff's visits with Dr. Zarintosh-Russell center on his chronic back pain, joint pain, and stiffness. (R. 312-22, 324-32, 348-49, 386-81). Aside from those general complaints, plaintiff's medical records with Dr. Zarintosh-Russell indicate an occasional flu, and headaches after his automobile accident.

Plaintiff began visiting rheumatologist Darrell R. Mease, M.D. in May, 2008. The record shows visits with Dr. Mease through the end of May, 2009. (R. 382-407, 424-533). On examination of plaintiff's musculoskeletal system, Dr. Mease consistently noted "Heberden's nodes (at DIPs [distal interphalangeal joints]); Bouchard's nodes (at PIPs [proximal interphalangeal joints])," that his gait was "affected by a right limp and slowed" with "grossly normal tone and muscle strength; range of motion," and decreased range of motion with pain in his shoulders, elbows, back, wrists, ankles, and knees. (R. 397, 400, 427, 432, 436, 440, 448, 452, 456, 461, 465, 469, 473, 477). Dr. Mease's diagnoses of plaintiff included rheumatoid arthritis, lower back pain, COPD (Chronic Obstructive Pulmonary Disease), neck pain, degenerative arthritis of the shoulder, and right knee pain. (R. 385, 397, 401, 427, 432, 436, 440, 448, 452, 456, 461, 465, 469, 473, 476). Treatment included bed rest, prescription medications to control pain and treat the rheumatoid arthritis, cold and hot packs, passive and active range of motion exercise, avoiding heavy exertion, smoking cessation, weight loss, proper diet, compression wraps, and joint elevation. (R. 385, 398, 401, 428, 432-33, 437, 440-41, 448-49, 452, 457, 461-62, 465-66, 469-70, 473-74, 477-78).

Dr. Mease completed two "Physical Medical Source Statement" forms. (R. 517-19, 530-32). In his first statement, completed August 5, 2008, Dr. Mease opined plaintiff retained the

ability to sit, stand, and/or walk one hour at a time, and one to two hours in an eight hour workday; that he would need to frequently change positions to relieve pain; that he could lift and/or carry up to 10 pounds frequently, and up to 25 pounds occasionally; that plaintiff's ability to use his feet repeatedly was limited in both feet; that he was unlimited in grasping objects, but was limited in fingering. Dr. Mease noted marked limitations for unprotected heights, being around moving machinery, extreme temperature changes, exposure to dust and/or fumes, driving, and vibration. Dr. Mease relied on testing results and past surgical history to form this opinion. (R. 519).

Dr. Mease's second medical source statement reveals degenerative changes in plaintiff's condition, resulting in a lower functional capacity. (R. 530-32). Dr. Mease opined here that plaintiff could sit, stand, and/or walk 10-30 minutes at a time; sit a total of two hours of an eight hour day, and stand and/or walk a total of one hour of an eight hour day, noting "[r]heumatoid arthritis, severe degenerative disc disease of lumbar spine [with] bilateral leg radiculopathy" in his comments. (R. 530). His lifting and carrying limitations stayed the same, but grasping was also limited, with frequency for handling, grasping, fingering, and feeling all rated occasional. (R. 531). Dr. Mease noted objective evidence to support his opinion, including rheumatoid arthritis, significant degenerative disc disease of the lumbar spine, and arthritic changes of the hands, knees, and back. (R. 532). In both medical source statements, Dr. Mease also opined that plaintiff would not be able to complete either an eight hour workday or a 40 hour work week. (R. 517, 530).

## Decision of the Administrative Law Judge

Plaintiff alleges his disabling impairments include arthritis, COPD, and back surgery. (R. 172). In assessing plaintiff's qualifications for disability, the ALJ determined plaintiff was

insured for Title II benefits through September 30, 2005. At step one of the five step sequential

evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since

his alleged onset date of December 1, 2004. The ALJ found severe impairments of "disorder of

lumbosacral and cervical spines, [and] rheumatoid arthritis" at step two. (R. 22). At step three,

the ALJ found plaintiff did not have an impairment or combination of impairments that met or

equaled a listing, relying on testimony from medical expert S. Krishnamurthi, M.D. (R. 23).

Before moving to step four, the ALJ found plaintiff had the residual functional capacity ("RFC")

to:

> … perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)
> with restriction to occasional climbing of stairs, balancing, crouching, bending,
> stooping, kneeling, or reaching above the shoulder, restriction to frequent feeling
> and manipulative functions with the hands, and he must avoid extremes of heat or
> cold.

Id. At step four, the ALJ determined plaintiff could not return to any of his past relevant work.

Relying on testimony from a vocational expert at step five, the ALJ determined plaintiff would

be able to perform the work of assembler, machine operator, and order clerk, resulting in a

finding of not disabled. (R. 26-27).

### Issues

Plaintiff's allegations of error are as follows:

1. The ALJ failed to properly consider the medical source evidence;

2. The ALJ failed to perform a proper step five determination; and

3. The ALJ failed to perform a proper credibility determination.

(Dkt. # 12 at 2).

### Discussion

Plaintiff argues the ALJ failed to properly consider one treating physician opinion from

Dr. Zarintosh-Russell, and one from Dr. Mease, both of which were before him, and that the

Appeals Council failed to properly weigh a second treating physician opinion from Dr. Mease. (Dkt. # 12 at 2). Defendant argues the Court "should not assume otherwise" when the ALJ states he has considered the entire record. (Dkt. # 16 at 3).

Ordinarily, a treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also Hackett v. Barnhart, 395 F.3d at 1173-74 (citing Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)). If the ALJ discounts or rejects a treating physician opinion, he is required to explain his reasoning for so doing. See Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987) (stating that an ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion); Thomas v. Barnhart, 147 Fed.Appx 755, 760 (10th Cir. 2005) (holding that an ALJ must give "adequate reasons" for rejecting an examining physician's opinion and adopting a non-examining physician's opinion).

In determining whether the opinion should be given controlling authority, the analysis is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Watkins, 350 F.3d at 1300. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

10

However, even if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, treating physician opinions are still entitled to deference and must be evaluated in reference to the factors enumerated in 20 C.F.R. § 404.1527, and § 416.927. Those factors are as follows:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. Id. (citing 20 C.F.R. § 404.1527(d)(2)). If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so. Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1990)). The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight. Anderson v. Astrue, 319 Fed. Appx. 712, 717 (10th Cir. 2009) (unpublished)[5].

If a treating physician's opinion addresses an issue ordinarily reserved to the Commissioner, such as a claimant's ability to work or the ultimate question of disability, the ALJ may not give controlling weight to that opinion. See Butler v. Astrue, 410 Fed.Appx. 137, 142 (10th Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)) (unpublished). While a treating physician's opinion is ordinarily entitled to controlling weight, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special

---

[5] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

significance." SSR 96-5p. The ALJ may not ignore those opinions but "must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record," using the factors set forth in 20 C.F.R. § 404.1527(d), and § 416.927(d), cited supra.

It is clear from the ALJ's discussion of plaintiff's RFC determination that he properly considered Dr. Zarintosh-Russell's opinion and treatment records. (R. 24). However, the Court finds the ALJ failed to discuss records from treating rheumatologist, Dr. Mease, when formulating plaintiff's RFC. This error is case dispositive. As noted *supra*, the Court is not permitted to interpret medical records for the ALJ. See Clifton v. Chater, 79 F.3d 1007, 1008 (10th Cir. 1996) (holding that the court will not "engage in the task of weighing evidence in cases before the Social Security Administration."). In addition, the Court "may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004). See also Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).

This error leaves the Court with no means of properly evaluating the ALJ's decision, without engaging in post-hoc rationalization and without interpreting the medical records. The Court finds it unnecessary to further analyze additional errors. The ALJ's consideration of Dr. Mease's records and opinions may affect his step five findings. On remand, if the ALJ finds plaintiff's credibility determination is affected by his consideration of Dr. Mease's records and opinions, he is free to re-evaluate plaintiff's credibility; otherwise, the ALJ's credibility analysis is affirmed.

## Conclusion

The decision of the Commissioner finding plaintiff not disabled is REVERSED and REMANDED as set forth herein.

SO ORDERED this 30th day of August, 2012.


T. Lane Wilson
United States Magistrate Judge